Jasen, J. (dissenting).
I cannot ascribe to the policy reasons assigned by the majority for today’s holding that negligent parental supervision is not actionable and that a negligent parent is not subject to a claim for apportionment of responsibility.
The parental duty to supervise was recognized in our early law (e.g., Longacre v. Yonkers. R. R. Co., 236 N. Y. 119,123; see, also, Mangam v. Brooklyn R. R. Co., 38 N. Y. 455, 457) although usually in conjunction with the issue of the child’'S own negligence, commonly on the now disapproved imputed negligence theory (Ann., 51 A. L. R. 209, 223; cf. General Obligations Law, § 3-111). But it should not matter that the parental conduct under review has not previously been explicitly denominated a tort. Nor for that matter should, as is implied by the majority, violation of a statute be the sole measure of tortious parental conduct. The fundamental issue is whether, under all the circumstances, there has been a breach of the duty of care reasonably to be expected. Gelbman v. Gelbman (23 N Y 2d 434) having removed the bar of intrafamily negligence immunity in New *52 York, the duty of supervision persists unconfined by that defense. Where that duty is breached, only the most cogent reasons of public policy should warrant denial of a remedy and consequent deviation from the central principle of Anglo-American tort law, which is that wrongdoers should bear the losses they cause.
As a practical matter, where there is no insurance an action by child against parent is improbable. (See Gibson v. Gibson, 3 Cal. 3d 914; James, Accident Liability Reconsidered: The Impact of Liability Insurance, 57 Yale L. J. 549, 553.) This follows from the natural ties of affection that bind the family unit and, practically speaking, from the parent’s power to hinder suit. Other justifications to which the court alludes — preservation of family harmony, avoidance of collusive suits, and preservation of the family fisc — have been considered and rejected in Gelbman.
The potential for abuse of a negligent supervision claim as an adjunct of an acrimonious matrimonial action, I regard as too remote. Suffice it to say that there is in any cause the potential for abuse but that has never been thought sufficient to warrant withholding of the remedy. To the assertion that the duty to supervise cannot be delineated or applied, I answer that juries daily perform greater miracles. What a reasonable and prudent parent would have done in similar circumstances should be the test and jurors, many of them parents themselves, drawing on their life experiences, should not find the task insuperable.
Moreover, the concept of elemental fairness underlying our decisions in Dole v. Dow Chem. Co. (30 N Y 2d 143) and Kelly v. Long Is. Light. Co. (31 N Y 2d 25) impels recognition of the fort. For as is so well illustrated by .the Holodook case now before the court, what logic can there be for a rule that denies the negligent driver recourse against the parent whose responsibility for the child’s injuries may be greater?
To be sure, it is in this, the third-party practice context, that we confront the really hard issues raised by recognition of the tort of negligent parental supervision. The court today articulates some of them.
It is said the parent, particularly the uninsured or under-insured, may hinder suit out of fear of partial liability. But this practical possibility is present in all intrafamily legal relation *53 ships, particularly parent vis-a-vis child. And such a possibility would not necessarily render nugatory the incentive to sue. For even if the parent is to share liability, he may still wish to proceed anyway to hold the stranger to his share.
Also, it is said that to permit a Dole-Kelly apportionment would as a practical matter reduce the injured child’s recovery and disrupt family harmony. But there are procedural safeguards against diminishment of the infant’s award (see CPLR 1206) and in the past the possibility of parental indemnity and family discord seems not to have deterred the courts in allowing an infant’s suit against the parent’s employer. (See Badigian v. Badigian, 9 N Y 2d 472, 477 [Fuld, J., dissenting].) Moreover, that the nonparent defendant should bear the full loss to which the parent has contributed runs counter to the evolution in our law which is toward a system of comparative fault. (E.g., Codling v. Paglia, 32 N Y 2d 330, 346 [concurring opn.].) And it should be noted, too, that in nonautomobile cases there may be a homeowner’s policy that triggers the law suit and protects the parent in a direct suit or in a Dole-Kelly apportionment.
Accordingly, I dissent.
Chief Judge Breitel and Judges Gabrielli, Jones and Wachtler concur with Judge Rabin ; Judge Jasen dissents and votes to reverse in a separate opinion in which Judge Stevens concurs.
In each case: Order affirmed, without costs.